**Francisco CALDERON and Jose Salinas, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Ed MADIGAN, in his official capacity as Secretary of Agriculture; Earl Tilley, in his official capacity as Administrator of the Farmers Home Administration; Michael Field, in his official capacity as State Director of the Farmers Home Administration for Idaho; and the Wilder Housing Authority, Defendants.**

Civ. No. 92–0063–S–MJC.

United States District Court, D. Idaho.

Oct. 27, 1992.

Andrew C. Thomas, ID Legal Aid Services, Caldwell, ID, Howard Belodoff, ID Legal Aid Services, Boise, ID, for plaintiffs.

Stuart M. Gerson, Felix V. Baxter, Joseph W. LoBue, U.S. Dept. of Justice, Washington, DC, Maurice O. Ellsworth, U.S. Atty., D. Marc Haws, Warren Derbidge, Asst. U.S. Attys., Boise, for defendants Madigan and Tilley.

## MEMORANDUM DECISION

CALLISTER, Senior District Judge.

The Court has before it a motion to lift preliminary injunction filed by defendant Wilder Housing Authority. The Court heard oral argument on the motion on September 30, 1992, and the motion is now at issue. In addition, the following motions are also at issue: (1) defendants' motion to stay proceedings; (2) plaintiffs' motion pursuant to Rule 56(f) to deny or continue federal defendants' motion for summary judgment; (3) plaintiffs' motion for preliminary injunction or notice to class members; (4) plaintiffs' motion to add party plaintiff and party defendant; and (5) plaintiffs' motion for class certification. The Court shall also resolve these motions.

This litigation began when two farmworker families were threatened with eviction from their homes in Chula Vista Acres, a subsidized low-income housing project for farm laborers run by the Wilder Housing Authority (Wilder). Wilder based its eviction notice on the ground that the farmworker families violated federal occupancy limitations because they had too many children. There were no allegations that the farmworker families were harboring friends or collateral relatives in the homes, and no evidence—during the initial stages of this litigation—that there were any rental payments in default or damage to the premises. The sole ground for the eviction was that the plaintiffs had too many children.

The plaintiffs sought a preliminary injunction to restrain the eviction until litigation could resolve the constitutionality of the occupancy limitations. At the hearing on the preliminary injunction, the Farmers Home Administration (FmHA) attorney, speaking for the FmHA, stated that Wilder had misinterpreted the regulations and that the regulations did not support the eviction. In addition, the Court was informed that the regulations were undergoing substantial revision.

Given these circumstances, the Court granted the motion for preliminary injunction restraining the eviction of the plaintiffs. The preliminary injunction was specifically conditioned upon the timely payment of rent by the plaintiffs, and upon compliance with all lease terms by the plaintiffs.

Wilder has now filed its motion to lift the preliminary injunction to allow a state court unlawful detainer action to proceed. Wilder filed the unlawful detainer action against plaintiff Jose Salinas on the ground that Salinas was not making timely rental payments. The state court judge presiding over the unlawful detainer action was notified of this Court's preliminary injunction and required counsel to obtain an order from this Court lifting the preliminary injunction before the unlawful detainer action could proceed. Wilder now requests this Court to lift the preliminary injunction for the limited purpose of allowing the unlawful detainer action to proceed against Jose Salinas.

The preliminary injunction issued by this Court was conditioned on the timely payment of rent. If the record before this Court indicated that there were questions concerning the amount or the dates of payment, the

Court would not hesitate to lift the stay to allow the unlawful detainer proceeding to go forward in state court. But here, the circumstances are somewhat different. Counsel admitted at oral argument that there is no dispute over the amounts paid by Salinas or the dates upon which payments were made. Instead, the real dispute appears to be over whether federal guidelines allow for a grace period following the due date of the rental payment. It thus appears that the Court is faced with an issue that could be decided on briefs to this Court.

The Court shall therefore reserve ruling on the motion to lift preliminary injunction and shall order the parties to submit briefs and affidavits under a certain schedule. If the Court determines that the plaintiff has made timely rental payments on the basis of the materials submitted to this Court, the Court will deny the motion to lift preliminary injunction. If, however, the Court finds, for example, that there is no grace period under the law, the Court shall lift the preliminary injunction and allow the Wilder Housing Authority to proceed in the state court detainer action. The Court shall make these determinations after examining the briefs without further argument.

■ The Court turns next to the motion to stay proceedings filed by the federal defendants. This motion seeks a stay of these proceedings until the new occupancy regulations are completed, probably within a month or two. The plaintiffs object to any stay, and argue further that if a stay is granted, notices should be sent advising borrowers not to evict any tenants under the present regulations and advising tenants to contact Idaho Legal Aid if eviction is attempted. In this regard, the plaintiffs have filed a motion for preliminary injunction or notice to class members that seeks an order from this Court requiring the defendants to send such a notice.

The Court notes that two other courts have faced this same issue, and both stayed their proceedings pending the issuance of the new regulations. In addition, both courts required the federal defendants to notify plaintiffs' counsel of any efforts to evict a low-income tenant on the basis of occupancy guideline violations. In addition, these courts required that the federal defendants should notify owners/borrowers of the current availability of regulatory exception procedures which may be used when tenants or applicants exceed the occupancy standards. *Tanner v. Ausman,* No. 91–1, 1992 WL 540813 (D.Vt., Jan. 28, 1992); *Butler v. Farmers Home Administration,* No. 90–191–S (D.N.H., Oct. 31, 1991).

The Court finds the results in these two cases persuasive. The plaintiffs want this Court to go further and require the federal defendants to instruct the borrowers that the present occupancy regulations are not to be enforced. The plaintiffs basically want the defendants enjoined from enforcing the present occupancy regulations either as to existing tenants or to housing applicants. The Court believes that this goes too far. The plaintiffs in this case established that they were not harboring collateral relatives or friends, and that their crowded conditions were not causing public health concerns. Although these problems were absent in this case, they might be present in another, and the owners of the housing projects should not be prohibited from raising these concerns.

This matter could be more reasonably resolved by requiring the federal defendants to notify the plaintiffs' counsel of each potential eviction so that plaintiffs' counsel could determine whether to bring that particular case before the Court. The Court is not faced here with a large number of evictions occurring throughout the state. In fact, all counsel agree that the two plaintiffs to this case are the only families that are under threat of eviction for violation of the occupancy regulations. Thus, it does not appear to be an unreasonable burden on plaintiffs' counsel to bring to the Court's attention each particular instance of threatened eviction under the occupancy regulations and to seek a preliminary injunction in those specific cases rather than obtaining a broad-based preliminary injunction at this point.

The Court therefore finds persuasive the decisions cited above in Vermont and New Hampshire, and will follow the precedent of those courts. The Court will grant the federal defendants' motion to stay these pro-

ceedings until the new regulations are instituted. In addition, the Court will require the federal defendants to notify plaintiffs' counsel of any effort to evict a low-income tenant on the basis of occupancy guideline violations. The defendants are under an obligation to notify plaintiffs' counsel of *any* such effort, not merely a court-invoked procedure. That is, the defendants may become aware of an informal attempt to evict a low income tenant on the basis of occupancy guideline violations, and that knowledge must be passed on by the defendants to plaintiffs' counsel. In addition, the Court shall order that the federal defendants notify owners/borrowers of the current availability of regulatory exception procedures which may be used when tenants or applicants exceed the occupancy standards. To the extent that the plaintiffs want the Court to go further in the notifications, the Court shall deny plaintiffs' motion in that regard.

■ The Court turns next to the plaintiffs' motion under Rule 56(f) to stay consideration of defendants' motion for summary judgment until further discovery can be done. The Court finds that the plaintiffs are entitled to discovery, but also finds that discovery should not begin until the new regulations are finalized. Once all parties know what the new regulations say, the plaintiffs can better focus their discovery and make it more efficient.

The Court shall therefore grant the plaintiffs' Rule 56(f) motion but will stay discovery in this case until the new regulations are finalized. This will not operate to prejudice the plaintiffs as the defendants are currently under a preliminary injunction restraining any eviction.

With these rulings, it is apparent that the Court will need a status conference with all counsel once the new regulations are finalized. The Court will require that counsel contact the Court as soon as possible after those regulations have been finalized and the Court will quickly schedule a status conference to determine how this case should proceed.

■ The Court turns next to plaintiffs' motion to add party plaintiff and party defen-

dant. The plaintiffs seek to add Paula Mathews as a plaintiff, and to add as a defendant the housing project she resides in—the Camas Street Apartments (Camas Street). When Ms. Mathews initially applied for admission at Camas Street on November 8, 1991, she stated that her household consisted of five persons, including herself, an adult male who is apparently her husband, Chuck McLean, and three children. *See* Declaration of Norma Sherman filed November 5, 1992, at p. 2. There is an indication on the application that Mathews was "unqualified" for occupancy. Nevertheless, one month later, on December 11, 1991, Ms. Mathews was allowed to enter into a lease agreement on a two-bedroom apartment, and signed a tenant certification form indicating that her household only consisted of four persons. Any reference to Chuck McLean was dropped.

In early May, 1992, Ms. Mathews informed Norma Sherman, who was the apartment manager, that Mathews wanted to add a newborn infant and Chuck McLean to the lease. Camas Street follows the FmHA occupancy regulations, and Manager Sherman told Ms. Mathews that these regulations would allow the newborn to stay, but that Chuck McLean could not reside there. Sherman then had Ms. Mathews sign an agreement whereby Ms. Mathews consented to vacate the apartment in thirty days. *See* Affidavit of Paula Mathews filed August 25, 1992, at p. 2. When Sherman saw that Ms. Mathews was not having any success finding another rental, she contacted the FmHA and was advised that "Ms. Mathews could remain in the apartment if the only reason she was unqualified for continued occupancy was the size of her household." *See* Declaration of Sherman at ¶ 10, p. 4. On July 15, 1992, Sherman told Ms. Mathews she could remain in the apartment, and Ms. Mathews signed a new tenant certification including the newborn baby and Chuck McLean. Sherman has stated in her declaration that she is not presently considering evicting Ms. Mathews based on her family size. *See* Declaration of Sherman at p. 5.

The plaintiffs seek to add Paula Mathews as a plaintiff to this action under the permissive joinder provisions of Fed.R.Civ.P. 20(c).

Plaintiffs assert that Ms. Mathews' household of six persons in a two-bedroom apartment clearly violates the same FmHA occupancy limitation that is under attack by plaintiffs Calderon and Salinas. Plaintiffs argue further that Camas Street must be added as a defendant to accord full relief to Ms. Mathews by enjoining her eviction. If Ms. Mathews is forced to file a separate suit, plaintiffs argue, she will have to reargue the same issues plaintiffs will be arguing here: Why do it twice?

The plaintiffs' arguments run up against Article III of the Constitution that requires federal courts to adjudicate only actual ongoing cases or controversies. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). Here, Paula Mathews has not been evicted and is not presently under direct threat of eviction as are plaintiffs Calderon and Salinas. Nevertheless, she argues that from May 1992 when she was told to move because her family was too large, until July 1992 when she was allowed . to stay, she was under a threat of discrimination based on family size. In addition, she points out that she needs to be recertified next year and is technically in violation of the FmHA occupancy regulations. Her tenancy is therefore clouded by the possibility that she could be rejected next year.

The Court will assume for the purpose of this motion only that Camas Street was guilty of improper discrimination between May 1992 and July 1992 when they told Ms. Mathews to leave because of her large family. That discrimination has now been corrected. Ms. Mathews does not claim to have any cause of action for monetary damages for this discrete act of discrimination; the relief she seeks is an injunction enjoining future evictions based on family size and a declaration that regulations permitting such evictions cannot stand.

After correcting its single instance of discrimination against Ms. Mathews, should Camas Street nevertheless be hailed into court to be told never to discriminate again? Certainly, if there is evidence "that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive."

*United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953). But where subsequent events have eradicated the effects of the alleged wrong and there is no reasonable expectation that it will recur, the case is moot and hence not justiciable. *County of Los Angeles v. Davis*, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). The defendant has the burden of showing that the alleged harm will not recur. *Ackley v. Western Conference of Teamsters*, 958 F.2d 1463 (9th Cir.1992).

In this case, the defendants have submitted the affidavit of manager Norma Sherman establishing that the effects of the discrimination have been eradicated because Ms. Mathews has been accepted and is residing in the apartments. Sherman further states that she is not "considering initiation of eviction proceedings at this time based upon either the size of Ms. Mathews' household or for any other reason." *See* Declaration of Sherman at p. 5. There is no evidence that other instances of discrimination based on family size have occurred at Camas Street. Because this is a single isolated instance that has been completely corrected and is not likely to recur, the Court finds the controversy moot. The Court will therefore deny plaintiffs' motion to add party plaintiff and party defendant. If Ms. Mathews is later threatened with eviction based on the same FmHA occupancy limitation at issue in this case, the plaintiffs will be free to re-raise their motion to join party plaintiff and party defendant at that time. The tenant is generally allowed thirty days to vacate the premises upon notice of eviction, and there is no indication that counsel for Legal Aid would be unable to appear before the federal court with a motion for temporary restraining order during that time and avoid any harm. Under that situation there would be a live controversy that could be adjudicated by this Court. But until that time, the matter is moot.

■ The Court turns next to plaintiffs' motion for class certification. Plaintiffs seek to certify a class of the following persons:

All persons residing, or who will reside, in all multi-family FmHA rural housing projects, whether 514, 515, or 516 in Idaho

whose right to tenancy is threatened or may be threatened, because their household size does not conform to FmHA's occupancy policies, as set out in 7 C.F.R. § 1930, subpt. C., Exhibit B(VI)(B)(2)(a).

The thrust of plaintiffs' action is to declare the FmHA's occupancy policies invalid and to therefore enjoin enforcement of those policies. No class certification is necessary to award this relief. A decision by this Court striking down the occupancy policies and enjoining their enforcement will inevitably benefit all in the proposed class even without a class certification.

The Ninth Circuit has held, in a decision written by now-United States Supreme Court Justice Anthony Kennedy, that when the relief sought by individual plaintiffs will, as a practical matter, produce the same result as formal class-wide relief, denial of class certification is appropriate. *James v. Ball,* 613 F.2d 180, 186 (9th Cir.1979), *rev'd on other grounds,* 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981). This holding was later narrowed in dicta in *Zepeda v. United States INS,* 753 F.2d 719 (9th Cir.1983). There, Chief Judge Wallace, writing for a two-judge majority, suggested that class certification should only be denied when class-wide relief would be an *inevitable* result of injunctive or declaratory relief granted to the named plaintiffs. *Id.* at n. 1, p. 729. The precedential value of *Zepeda* has been limited by this Circuit to cases involving preliminary injunctions. *Bresgal v. Brock,* 843 F.2d 1163, 1169 (9th Cir.1987). Assuming that *Zepeda* does limit the rule set forth in *James,* it is nevertheless clear that class-wide relief in this case would be an inevitable result of injunctive or declaratory relief granted to the named plaintiffs, and therefore that class certification should be denied. If this Court declares the occupancy limitations invalid, all those whose right to tenancy is threatened or may be threatened because their household size does not conform to the occupancy limitations will be directly benefited by the Court's decision. There is thus no need for class certification.

The Court would, however, be compelled to revisit this decision, and its decision on standing, if the named plaintiffs' claims are

mooted in a way that makes these cases "capable of repetition yet evade review." *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); *see also, Keefe v. Ausman,* Civil No. 90–191–S 1991 WL 534918 (D.N.H., Aug. 16, 1991). But at the present time, the Court is faced with named plaintiffs who have alleged actual injury, and named defendants who could be enjoined from enforcing the occupancy limitations thereby benefiting not only the named plaintiffs, but all those similarly situated.