**SOUTHWEST CENTER FOR BIO-
LOGICAL DIVERSITY; and
David Hogan, Plaintiffs,**

v.

**John G. ROGERS, Jr., in his official ca-
pacity as Director of the United States
Fish and Wildlife Service; et al., Defen-
dants,**

and

**Phelps Dodge Corporation,
Defendant–Intervenor.**

**CV 96–018 TUC JMR.**

United States District Court,
D. Arizona.

Dec. 18, 1996.

Diane M. Connolly, Boulder, Colorado, for Plaintiffs.

Janet A. Napolitano, United States Attorney, Phoenix, Arizona, Eugene Bracamonte, Assistant United States Attorney, Tucson, AZ, Warigia Bowman, Wildlife & Marine Resources Section, Environment and Natural Resources Division, Washington, D.C., Jerry L. Haggard and Kevin Moran, Apker, Apker, Haggard & Kurtz, Phoenix, Arizona, for Defendants.

## ORDER

ROLL, District Judge.

Plaintiffs Southwest Center for Biological Diversity and David Hogan brought this action to obtain a declaratory judgment against defendants United States Fish and Wildlife Service ("FWS"), FWS director John Rogers, Secretary of the Interior Bruce Babbitt, and the United States Department of the Interior. The Court has granted Phelps Dodge Corporation's motion to intervene as a defendant in this matter.

Defendants and defendant-intervenor seek dismissal, in part, on grounds of ripeness. For the reasons set forth below, the motions to dismiss are granted.

## FACTS

On June 18, 1985, the FWS proposed to list two fish species, the spikedace and loach minnow, as threatened species and proposed a critical habitat for the species. The spikedace and loach minnow were listed as threatened species on July 1, 1986 and October 28, 1986 respectively. However, the FWS concluded that additional time was required to designate the habitat for these two threatened species, and, therefore no final designation of critical habitat was made.

By May 1993, the FWS had yet to render a final critical habitat designation, and on May 11, 1993, the Southwest Center for Biological Diversity and the Greater Gila Biodiversity Project sent defendants a sixty day notice demanding immediate designation of a critical habitat for the two species.

Thereafter, on October 5, 1993, the Greater Gila Biodiversity Project and two individuals filed suit against defendants alleging that the FWS had failed to perform its non-discretionary duty under Section 4(b)(6)(c)(ii) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1533(b)(6)(c)(ii), to finalize the critical habitat designation for the spikedace and loach minnow. The case was settled with the requirement that FWS make a final critical habitat designation by February of 1994.

On March 8, 1994, FWS caused to be published in the Federal Register the final critical habitat designation for the two species. Two federal judicial districts in two circuits are affected by the designation. During argument on the motion to dismiss, plaintiffs stated that approximately two-thirds of the critical habitat designation is located within the District of New Mexico and one-third is located within the District of Arizona.

The FWS's designation triggered the filing of a lawsuit in the United States District Court for the District of New Mexico by the Catron County Board of Commissioners of New Mexico in April 1994. Catron County objected to the critical habitat as constituting an unjustified burden on the land within the District of New Mexico and maintained that the FWS had failed to comply with the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321 et seq. in designating the critical habitat for the two species. The district court granted Catron County's motion for partial summary judgment and found that Catron County was entitled to injunctive relief. Actual issuance of a preliminary injunction was stayed by the district court pending review by the Tenth Circuit Court of Appeals.

In *Catron County v. U.S. Fish and Wildlife*, 75 F.3d 1429 (10th Cir.1996), the Tenth Circuit affirmed the district court's ruling and entered the preliminary injunction against the FWS. In its ruling, the Tenth Circuit directed that the FWS comply with NEPA before issuing a critical habitat designation, and, accordingly, enjoined the FWS from enforcing and implementing the critical habitat designation. The injunction is addressed to the entire habitat and therefore encompasses land in both the District of New Mexico and the District of Arizona. The FWS sought reconsideration of the panel's decision and then petitioned for rehearing *en banc*. The FWS was unsuccessful, and thereafter, the government elected not to appeal the Tenth Circuit's ruling to the United States Supreme Court.

In the matter pending before this Court, Plaintiffs allege that defendants have violated the ESA by approving a critical habitat for the spikedace and loach minnow without providing an adequate recovery habitat. In effect, Plaintiffs argue that the FWS has not

gone far enough in making a critical habitat designation for these threatened fish in that the FWS has not designated habitat sufficient for the recovery of these species.

## ISSUE PRESENTED

Although defendant-intervenor raises lack of standing and both defendant-intervenor and defendants argue that plaintiffs failed to exhaust available administrative remedies, this order addresses only the issue of justiciability. The issue presented here is whether the United States District Court for the District of Arizona should proceed to address whether the critical habitat previously designated by the FWS provides habitat sufficient for the recovery of the species notwithstanding the fact that the Tenth Circuit has enjoined the designation.

## DISCUSSION

The Tenth Circuit has enjoined the FWS from designating certain territory, including lands in both the Ninth and Tenth Circuits, as critical habitat for two threatened species of fish until the FWS complies with NEPA.[1] One requirement of NEPA is preparation of an Environmental Impact Statement ("EIS"). The parties agree that as a result of the Tenth Circuit's ruling, an EIS will be prepared and the ultimate result of compliance with NEPA may be reconfiguration of the area designated by FWS as critical habitat for the spikedace and loach minnow. That order may ultimately include adequate recovery habitat.

Plaintiffs emphasize and this Court recognizes that in *Douglas County v. Babbitt,* 48 F.3d 1495 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 698, 133 L.Ed.2d 655 (1996), the Ninth Circuit held that NEPA need not be complied with before the Secretary of the Interior may designate area as critical habitat. *Douglas County* pertained to the protection of the spotted owl in the District of Oregon. There, the Ninth Circuit ruled that NEPA procedure was superfluous in light of compliance with the ESA. Specifically, the Ninth Circuit held that compliance

with the ESA, which includes (1) publishing a notice and the text of the designation in the Federal Register, (2) giving actual notice to each affected state, (3) giving notice to appropriate organizations, (4) publishing a summary of the designation in local papers, and (5) if requested, the holding of a public hearing, provides sufficient procedural protection to affected parties. 48 F.3d at 1503 (citing 16 U.S.C. § 1533(b)(5)).

In reaching a contrary conclusion, the Tenth Circuit in *Catron County* ruled that ESA procedures have not displaced NEPA requirements. The Tenth Circuit observed that while the ESA has as its "core purpose ... to prevent the extinction of species by preserving and protecting the habitat upon which they depend from the intrusive activities of humans," NEPA's purpose is to ensure "that a federal agency makes informed, carefully calculated decisions when acting in such a way as to affect the environment and also enables dissemination of relevant information to external audiences potentially affected by the agency's decision." 75 F.3d at 1437 (citation omitted).

■ Obviously it is not this Court's prerogative to decide whether the Ninth Circuit's approach is preferable to that of the Tenth Circuit. This Court is obligated to follow the law of the Ninth Circuit even if that law is inconsistent with that of other circuits. *United States v. Martinez,* 967 F.2d 1343, 1347 (9th Cir.1992). *See also, Aetna Life Insurance Co. v. Alla Medical Services, Inc.,* 855 F.2d 1470, 1473 (9th Cir. 1988). The Tenth Circuit's decision is not merely conflicting authority, however. It is a ruling on the identical dispute before this Court affecting the justiciability of this dispute.

■ Justiciability blends both constitutional limitations and prudential considerations, and includes standing, ripeness, mootness, the political question doctrine and the prohibition against advisory opinions. Erwin Chemerinsky, *Federal Jurisdiction* § 2.1 (1989). *See also Assiniboine & Sioux Tribes*

---

1. "[A] federal agency is not necessarily entitled to confine any ruling of a court of appeals to its immediate jurisdiction." *Bresgal v. Brock,* 843

F.2d 1163, 1170 (9th Cir.1987) (citing *Califano v. Yamasaki,* 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979)).

of the *Fort Peck Indian Reservation v. Board of Oil & Gas Conservation,* 792 F.2d 782, 787 (9th Cir.1986) (citations omitted). As noted by the Ninth Circuit, these concepts tend to merge together, and, therefore, a justiciability analysis is more appropriately undertaken with emphasis on the underlying policies rather than the specific categories. *Assiniboine,* 792 F.2d at 787.

■ Here, defendants emphasize the dilemma that will arise should a federal court in the Ninth Circuit persist in deciding whether a critical habitat designation enjoined by the Tenth Circuit is adequate to provide recovery for the two threatened species. For example, should this Court resolve the issue by enforcing the critical habitat designation or requiring that additional territory be added thereto, in order for the defendants to comply with this Court's order the FWS will be required to disobey the Tenth Circuit's preliminary injunction.

Although plaintiffs suggested in their written response to defendants' motion to dismiss that this Court could avoid such a conflict by addressing only the critical habitat situated within the District of Arizona, at argument, all sides appeared to concede that this would nevertheless pose serious problems for the federal government.[2]

Moreover, to the extent that plaintiffs here request that this Court review a critical habitat designation presently enjoined by the Tenth Circuit, that request implicates both issues of ripeness and mootness.

Given the Tenth Circuit's injunction there is presently no final critical habitat designation in place for this Court to review. Only after the FWS complies with NEPA will a critical habitat for the spikedace and loach minnow be redesignated. Depending on what is discovered through the NEPA procedures, and whether any redesignated critical habitat encompasses a greater or different area, plaintiffs' requests for designation of habitat sufficient for the recovery of the species may become moot. Further, in the absence of an enforceable critical habitat desig-

nation, the controversy asserted by plaintiffs is not sufficiently concrete to warrant intervention by this Court at this time. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Assiniboine,* 792 F.2d at 788. The controversy will ripen, if at all, only upon the FWS' redesignation of critical habitat.

Additionally, to the extent that plaintiffs invite the Court to give direction to the FWS as to deficiencies in the enjoined critical habitat designation in order to assist the FWS in fashioning a new designation after compliance with NEPA, such a ruling would have only advisory effect. The Court declines the invitation.

Finally, there are principles of comity between the Ninth Circuit and Tenth Circuit which must be recognized. *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *Church of Scientology v. Dept. of Defense,* 611 F.2d 738, 750 (9th Cir.1979).

For all of these reasons, whether cast in terms of ripeness, mootness or advisory opinion, the Court finds this matter is not justiciable.

## CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that defendants' and defendants-intervenor's motions to dismiss are **GRANTED,** and this case is **DISMISSED WITHOUT PREJUDICE** with **JUDGMENT** to be entered accordingly.

**IT IS FURTHER ORDERED** that the Motion to Submit Brief Amicus Curiae on Behalf of the Coalition of Counties is **GRANTED.**

**IT IS FURTHER ORDERED** that the cross-motions for summary judgment are **DENIED as MOOT.**

---

**2.** For example, defendant FWS has suggested that while most surface water does not flow across the Arizona/New Mexico boundary, critical habitat plans can involve diversion of water

and even limiting removal of ground water. Such action taken within the District of Arizona could directly impact the enjoined critical habitat in the District of New Mexico.