75 F.3d 1429
 41 ERC 2057, 26 Envtl. L. Rep. 20,808
 CATRON COUNTY BOARD OF COMMISSIONERS, NEW MEXICO, Plaintiff-Appellee,
v.
UNITED STATES FISH AND WILDLIFE SERVICE, an agency of the
U.S. Department of the Interior; Bruce Babbitt, Secretary
of the Interior; Richard Smith, Acting Director of the U.S.
Fish and Wildlife Service; John Rogers, Regional Director
of Region 2 of the U.S. Fish and Wildlife Service; Sam
Spiller, Field Supervisor, Region 2, U.S. Fish and Wildlife
Service, Defendants-Appellants.
 No. 94-2280.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 2, 1996.
 
 Appeal from the United States District Court for the District of New Mexico (D.C. No. CIV-93-730-HB).
 Jim Kilborn, Environmental and Natural Resources Division, U.S. Dept. of Justice, Washington, D.C. (Lois J. Schiffer, Assistant Attorney General, Beverly Ohline, Office of the Solicitor, Department of the Interior, Albuquerque, New Mexico, Brian L. Ferrell, Ellen Kohler, John A. Bryson, and Albert M. Ferlo, Jr., Attorneys, Environmental and Natural Resources Division, U.S. Dept. of Justice, Washington, DC, with him on the brief), for Defendants-Appellants.
 Vance E. Haug, Budd-Falen Law Offices, Cheyenne, Wyoming, and Lee E. Peters, Hubert & Hernandez, P.A., Las Cruces, New Mexico (Karen Budd-Falen, Budd-Falen Law Offices, Cheyenne, Wyoming, and James Catron, Catron County Attorney, LaJoya, New Mexico, with Mr. Peters on the brief), for Plaintiff-Appellee.
 Lori Potter, Munir R. Meghjee, and Debra Asimus, Sierra Club Legal Defense Fund, Denver, Colorado, for Sierra Club, Gila Watch, Four Corners Action Coalition, and the Colorado Environmental Coalition, amici curiae.
 Paul M. Seby and William Perry Pendley, Mountain States Legal Foundation, Denver, Colorado, amicus curiae.
 Before KELLY and BARRETT, Circuit Judges, and O'CONNOR, District Judge.
 PAUL KELLY, Jr., Circuit Judge.
 
 
 1
 The United States Fish and Wildlife Service and various governmental officials (FWS, Secretary or Appellants) appeal the district court's order granting Catron County's (County or Appellee) motion for partial summary judgment in the County's action alleging that the Secretary of Interior (Secretary or Appellants), acting on behalf of the FWS, failed to comply with the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321-70d, in designating certain lands within the County as critical habitat for the spikedace and loach minnow. Aplt.App. at 24-39. In addition, the district court granted the County's motion for injunctive relief but stayed its order pending appeal. We exercise jurisdiction under 28 U.S.C. § 1292(a)(1) and affirm.
 
 I. Background
 
 2
 In 1985, the Secretary proposed listing the spikedace and loach minnow as threatened species and establishing a critical habitat for them. 50 Fed.Reg. 25,380 (loach minnow), 25,390 (spikedace) (1985). The Secretary's proposed designation comprised approximately 74 miles of river habitat in the County. The notice also provided for a sixty-day comment period, which was subsequently extended by an additional several weeks, and scheduled three public meetings to gather additional information and comments on the proposed actions. See 50 Fed.Reg. 37,703-704 (1985). Also in his proposal, the Secretary determined that he was not required to comply with the documentation requirements of NEPA, claiming that Secretarial actions under § 1533 of the Endangered Species Act (ESA), 16 U.S.C. §§ 1531-44, are exempt from NEPA as a matter of law. See 50 Fed.Reg. 25,385, 25,395 (1985) (citing 48 Fed.Reg. 49,244). The Secretary received over one hundred written comments and over thirty oral comments. See 59 Fed.Reg. 10,899 (1994). In 1986, pursuant to § 1533(b)(6)(A) of the ESA, the Secretary adopted final regulations listing the species as threatened and extended the deadline for final designation of critical habitat. 51 Fed.Reg. 23,769 (spikedace), 39,468 (loach minnow) (1986). In June 1993, the County filed suit alleging that the Secretary failed to comply with the Administrative Procedure Act (APA), 5 U.S.C. §§ 551-76, the ESA and NEPA. In March 1994, the Secretary issued notice of final designation of critical habitat, which became effective on April 7, 1994. 59 Fed.Reg 10,898 (loach minnow), 10,906 (spikedace) (1994). In April 1994, the County filed its motion for injunctive relief claiming that the Secretary had failed to comply with NEPA and seeking to prevent the Secretary from implementing and enforcing its designation of critical habitat. The district court granted Appellants' motion to consolidate for consideration both the County's motion for injunctive relief and the parties' motions for partial summary judgment. Aplt.App. 28.
 
 
 3
 On October 13, 1994, finding that the Secretary had failed to comply with NEPA in designating critical habitat, the district court granted the County's motions for partial summary judgment and injunctive relief. Aplt.App. 24-39.
 
 
 4
 II. Discussion.
 
 
 5
 A. Standing.
 
 
 6
 The Secretary initially questions the County's standing to challenge his action. We review questions of standing de novo, Mountain Side Mobile Estates Partnership v. Secretary of Housing and Urban Development, 56 F.3d 1243, 1249 (10th Cir.1995), and construe the complaint in favor of the plaintiff, accepting as true all material allegations, State ex rel. Sullivan v. Lujan, 969 F.2d 877, 879 (10th Cir.1992). The party invoking federal jurisdiction bears the burden of establishing an actual or imminent injury that is concrete and particularized rather than conjectural or hypothetical; a causal connection that is "fairly traceable" to the conduct complained of; and a likelihood of redressability in the event of a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations omitted).
 
 
 7
 Appellee has alleged injury in fact. In particular, the County asserts that designation of critical habitat would prevent the diversion and impoundment of water by the County, thereby causing flood damage to county-owned property, such as the fairgrounds, roads and bridges. The County's claim of flood damage to its property constitutes a threatened or imminent injury to a concrete and particularized legally protected interest. These injuries are perceptible and environmental, not merely speculative or purely economic, and fall well within the zone of interests protected by NEPA. Because we find that the County's asserted threatened injury to its property constitutes an injury in fact, we need not address whether the County's alleged injuries to its riparian, agricultural, economic or public interests would likewise satisfy the test.
 
 
 8
 The County also adequately demonstrates a causal link between its likely injury and the conduct complained of, namely the Secretary's failure to comply with NEPA. The Supreme Court has noted that if "the plaintiff is himself an object of the [challenged] action.... there is ordinarily little question that the action or inaction has caused him injury...." Defenders of Wildlife, 504 U.S. at 561, 112 S.Ct. at 2137 (emphasis added). Here, as an owner of property that falls within the proposed critical habitat designation and will likely be adversely affected by such designation, the County is the object of the Secretary's alleged failure to act in compliance with NEPA.
 
 
 9
 Finally, the County has shown "redressability" by demonstrating a substantial likelihood that Secretarial compliance with NEPA will redress the claimed injuries. NEPA compliance would require the Secretary to assess the environmental impact and potential alternatives to his proposed action. 42 U.S.C. § 4332(2)(C), (E). That the Secretary may ultimately make the same decision and designate critical habitat within the same geographical parameters is immaterial; the County's alleged injury results from Secretarial failure substantively to consider the environmental ramifications of its actions in accordance with NEPA. The "risk implied by a violation of NEPA is that real environmental harm will occur through inadequate foresight and deliberation" by the acting federal agency. Sierra Club v. Marsh, 872 F.2d 497, 504 (1st Cir.1989) (Breyer, J.).
 
 
 10
 Because NEPA does not provide a private right of action for violations of its provisions, Lujan v. National Wildlife Fed., 497 U.S. 871, 882, 110 S.Ct. 3177, 3185, 111 L.Ed.2d 695 (1990), the County claims a right to judicial review under the APA.[1] In addition to Article III standing requirements, a plaintiff seeking judicial review pursuant to the APA must (i) identify some "final agency action" and (ii) demonstrate that its claims fall within the zone of interests protected by the statute forming the basis of its claims. National Wildlife Fed., 497 U.S. at 882-83, 110 S.Ct. at 3185-86. In this case, the County satisfies the standing requirements of the APA. The Secretary's alleged failure to comply with NEPA constitutes "final agency action," see 5 U.S.C. § 551(13), and the County's claimed injuries to its proprietary and procedural interests fall within the zone of interests protected by the ESA.
 
 
 11
 B. Statutory Framework.
 
 
 12
 1. NEPA.
 
 
 13
 NEPA requires any federal agency proposing a "major Federal action[s] significantly affecting the quality of the human environment" to prepare what is known as an Environmental Impact Statement (EIS), detailing the environmental impact of the action; unavoidable adverse environmental effects; alternatives to the action; relationship between the short-term uses and long-term productivity of the affected environment; and irretrievable and irreversible commitments of resources should the action be implemented. 42 U.S.C. § 4332(2)(C)(i)-(v). Preparation of an impact statement serves two primary purposes: (1) "to inject environmental considerations into the federal agency's decisionmaking process," and (2) "to inform the public that the agency has considered environmental concerns in its decisionmaking process." Weinberger v. Catholic Action of Hawaii, 454 U.S. 139, 143, 102 S.Ct. 197, 201, 70 L.Ed.2d 298 (1981); see also Sierra Club v. Hodel, 848 F.2d 1068, 1088 (10th Cir.1988). An EIS also enables critical evaluation of an agency's actions by those outside the agency. Environmental Defense Fund, Inc. v. Froehlke, 473 F.2d 346, 351 (8th Cir.1972).
 
 
 14
 For proposed actions the environmental effects of which are uncertain, the agency must prepare an Environmental Assessment (EA) to determine whether a significant effect will result from the proposed action. 42 U.S.C. § 4332(2)(E); see also 40 C.F.R. § 1508.9; Oregon Natural Resources Council v. Lyng, 882 F.2d 1417, 1421-22 (9th Cir.1989). Based upon the EA, the agency must either make a "finding of no significant impact" (FONSI) or determine if a significant environmental impact will result, thus requiring the preparation of an EIS. Committee to Preserve Boomer Lake Park v. Dept. of Transp., 4 F.3d 1543, 1554 (10th Cir.1993). Federal agencies must comply with NEPA "to the fullest extent possible." 42 U.S.C. § 4332.
 
 
 15
 2. ESA.
 
 
 16
 The ESA seeks to protect designated species from extinction caused by human activity by preserving the ecosystems upon which the species depend. 16 U.S.C. § 1531(b). The ESA instructs the Secretary to list species determined to be threatened or endangered according to enumerated criteria. Id. § 1533(a)(1). For each listed species the Secretary must "designate any habitat of such species ... [as] critical habitat," id. § 1533(a)(3)(A), which, contrary to the suggestion of the Secretary, Rep.Br. at 3, effectively prohibits all subsequent federal or federally funded or directed actions likely to destroy or disrupt the habitat, id. § 1536(a)(2).
 
 
 17
 To designate critical habitat, the Secretary must use the best scientific data available to identify a geographical area that satisfies the statutory definition of critical habitat,[2] consider the "economic impact, and any other relevant impact," of designating the habitat, and weigh the benefits of exclusion against those of inclusion of particular areas within the designated habitat. Id. § 1533(b)(2). In addition, the Secretary must follow enumerated procedures for public notification and comment during the process of designating critical habitat. Id. § 1533(b)(4)-(6).
 
 
 18
 C. NEPA's Applicability To ESA.
 
 
 19
 1. Standard Of Review.
 
 
 20
 We review a grant of summary judgment de novo, applying the same standard used by the district court under Fed.R.Civ.P. 56(c). Rohrbaugh v. Celotex Corp., 53 F.3d 1181, 1182 (10th Cir.1995). The court should grant summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[W]e construe the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Blue Circle Cement, Inc. v. Board of County Comm'rs, 27 F.3d 1499, 1503 (10th Cir.1994). "Summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof." Rohrbaugh, 53 F.3d at 1183. Whether the Secretary must comply with the documentation requirements of NEPA when designating critical habitat under the ESA is a question of first impression in this circuit.
 
 
 21
 2. Relevant Precedent.
 
 
 22
 Compliance with NEPA is excused when there is a statutory conflict with the agency's authorizing legislation that prohibits or renders compliance impossible. See H.R.Conf.Rep. No. 91-765, 91st Cong., 1st Sess. (1969), reprinted in 1969 U.S.C.C.A.N. 2767, 2770; see also Flint Ridge Dev. Co. v. Scenic Rivers Ass'n, 426 U.S. 776, 788, 96 S.Ct. 2430, 2438, 49 L.Ed.2d 205. Judicial interpretation of what constitutes a "conflict" with NEPA has varied, however. Courts have approved noncompliance with NEPA on the basis of statutory conflict after finding either (i) an unavoidable conflict between the two statutes that renders compliance with both impossible; or (ii) duplicative procedural requirements between the statutes that essentially constitute "functional equivalents," rendering compliance with both superfluous.
 
 
 23
 In Flint Ridge, the Supreme Court addressed a conflict between NEPA and the Interstate Land Sales Full Disclosure Act (Disclosure Act), which imposes a statutory duty upon the Secretary of Housing and Urban Development (HUD) to allow statements of record to go into effect within 30 days of filing unless the Secretary of HUD acts affirmatively within that time to suspend it for inadequate disclosure. See 15 U.S.C. § 1706. Finding it "inconceivable that an environmental impact statement could, in 30 days, be drafted, circulated, commented upon, and then reviewed and revised," the Supreme Court held that a "clear and fundamental conflict of statutory duty" existed between NEPA and the Disclosure Act that prevented simultaneous compliance with both statutes. Flint Ridge, 426 U.S. at 788-91, 96 S.Ct. at 2438-39. In light of the "clear and unavoidable conflict in statutory authority," the Supreme Court held that "NEPA must give way ... '[as] NEPA was not intended to repeal by implication any other statute.' " Id. at 788, 96 S.Ct. at 2438 (quoting United States v. SCRAP, 412 U.S. 669, 694, 93 S.Ct. 2405, 2419, 37 L.Ed.2d 254 (1973)).
 
 
 24
 NEPA compliance has also been excused by some courts where the particular action being undertaken is subject to rules and regulations that essentially duplicate the NEPA inquiry. See, e.g., Merrell v. Thomas, 807 F.2d 776, 778 (9th Cir.1986), cert. denied, 484 U.S. 848, 108 S.Ct. 145, 98 L.Ed.2d 101 (1987) (holding that to require registration procedures under both NEPA and Federal Insecticide, Fungicide, and Rodenticide Act would be superfluous); Pacific Legal Foundation v. Andrus, 657 F.2d 829, 835 (6th Cir.1981) (NEPA conflicts with ESA provisions regarding listing of species as endangered or threatened); Portland Cement Ass'n v. Ruckelshaus, 486 F.2d 375, 384 (D.C.Cir.1973), cert. denied, 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974) (EPA not required to comply with NEPA when promulgating standards under § 111 of the Clean Air Act). In view of the focus of the ESA critical habitat designation, we do not believe that the NEPA inquiry has been duplicated, nor do we believe the statutes are mutually exclusive. We rejected an analogous argument in Davis v. Morton, 469 F.2d 593 (10th Cir.1972). We declined to find an unavoidable, irreconcilable conflict between NEPA and 25 U.S.C. § 415, a statute that regulates secretarial approval of leases on Indian lands. Section 415 provided that "prior to approval of any lease [on Indian land] ... the Secretary of Interior shall first satisfy himself that adequate consideration has been given to ... the effect on the environment of the uses to which the leased lands will be subject." 25 U.S.C. § 415. The government argued that NEPA did not apply to § 415 because the latter statute required the Bureau of Indian Affairs (BIA) to consider the environmental ramifications of its authorization of leases. Davis, 469 F.2d at 598. We disagreed, noting that, unlike NEPA, § 415 did not require substantive and in depth environmental consideration but rather a more focused analysis of issues concerning the lease of Indian land. We concluded that "unless the obligations of another statute are clearly mutually exclusive with the mandates of NEPA, the specific requirements of NEPA will remain in force." Id.
 
 
 25
 The Secretary relies upon Douglas County v. Babbitt, 48 F.3d 1495 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 698, 133 L.Ed.2d 655 (1996) and urges us to adopt its holding. After careful consideration, we believe our precedent and analysis require a different result. In Douglas County, the Ninth Circuit addressed the precise issue before us. That case arose after the Secretary attempted to designate critical habitat for the Spotted Owl, a species he listed as threatened in June 1990 pursuant to the ESA. See 55 Fed.Reg. 26,114 (1990). In May 1991, the Secretary issued a proposal designating over 11 million acres as critical habitat, asserting that he need not comply with NEPA's documentation requirements. See 56 Fed.Reg. 20,824 (1991); 48 Fed.Reg. 49,244 (1983) (letter from the Council on Environmental Quality (CEQ) indicating that the Secretary may cease complying with NEPA for actions under § 1533 of ESA). After Douglas County filed suit claiming that the Secretary had failed to comply with NEPA, the Secretary issued a final habitat designation comprising almost 7 million acres of exclusively federal land. The district court held that Douglas County had standing to sue, granted Douglas' motion for summary judgment finding that NEPA did apply to the Secretary's decision to designate critical habitat under the ESA and, sua sponte, stayed the order pending appeal. Douglas County v. Lujan, 810 F.Supp. 1470, 1484-85 (D.Or.1992).
 
 
 26
 The Ninth Circuit affirmed in part and reversed in part, holding that while Douglas County did have standing, NEPA did not apply. Douglas County, 48 F.3d at 1507-08. We disagree with the panel's reasoning. First, given the focus of the ESA together with the rather cursory directive that the Secretary is to take into account "economic and other relevant impacts," we do not believe that the ESA procedures have displaced NEPA requirements. Secondly, we likewise disagree with the panel that no actual impact flows from the critical habitat designation. Merely because the Secretary says it does not make it so. The record in this case suggests that the impact will be immediate and the consequences could be disastrous. The preparation of an EA will enable all involved to determine what the effect will be. Finally, we believe that compliance with NEPA will further the goals of the ESA, and not vice versa as suggested by the Ninth Circuit panel. For these reasons and in view of our own circuit precedent, we conclude that the Secretary must comply with NEPA when designating critical habitat under ESA.
 
 
 27
 3. Factual Analysis.
 
 
 28
 Appellants do not allege that compliance with both statutes is impossible due to an unavoidable, irreconcilable conflict between § 1533 of ESA and NEPA's documentation requirements. See Flint Ridge, 426 U.S. at 788-91, 96 S.Ct. at 2438-39. Rather, Appellants argue that the similarity of the statutes' procedures, together with congressional failure to respond to judicial and executive announcements of NEPA noncompliance, evidence Congress' implicit intent to "displace[ ] NEPA's procedural and informational requirements." Aplt.Br. at 38.
 
 
 29
 It is clear that the provisions of the ESA governing the designation of critical habitat instruct the Secretary to follow procedures that to some extent parallel and perhaps overlap the requirements imposed by NEPA. Together, the ESA requirements for notice and environmental consideration partially fulfill the primary purposes of NEPA, namely, "to inject environmental consideration into the federal agency's decisionmaking.... [and] inform the public that the agency" has considered the environment. Catholic Action of Hawaii, 454 U.S. at 143, 102 S.Ct. at 201; see also Sierra Club v. Hodel, 848 F.2d at 1088.
 
 
 30
 Partial fulfillment of NEPA's requirements, however, is not enough. The plain language of NEPA makes clear that "to the fullest extent possible" federal agencies must comply with the act and prepare an impact statement for all major federal actions significantly affecting the environment. 42 U.S.C. § 4332(C). NEPA does not require particular results but rather a particular process. Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 350, 109 S.Ct. 1835, 1845, 104 L.Ed.2d 351 (1989); see also 40 C.F.R. 1500.1(c). NEPA ensures that a federal agency makes informed, carefully calculated decisions when acting in such a way as to affect the environment and also enables dissemination of relevant information to external audiences potentially affected by the agency's decision. Robertson, 490 U.S. at 349, 109 S.Ct. at 1845.
 
 
 31
 By contrast, ESA's core purpose is to prevent the extinction of species by preserving and protecting the habitat upon which they depend from the intrusive activities of humans. See 16 U.S.C. 1531(b). While the protection of species through preservation of habitat may be an environmentally beneficial goal, Secretarial action under ESA is not inevitably beneficial or immune to improvement by compliance with NEPA procedure. The designation of critical habitat effectively prohibits all subsequent federal or federally funded or directed actions likely to affect the habitat. Id. at § 1536(a)(2). The short- and long-term effects of the proposed governmental action (and even the governmental action prohibited under ESA designation) are often unknown or, more importantly, initially thought to be beneficial, but after closer analysis determined to be environmentally harmful. Furthermore, that the Secretary believes the effects of a particular designation to be beneficial is equally immaterial to his responsibility to comply with NEPA. "[E]ven if the Federal agency believes that on balance the effect [of the action] will be beneficial," regulations promulgated by the Council on Environmental Quality (CEQ) nonetheless require an impact statement. 40 C.F.R. § 1508.27(b)(1); see also Environmental Defense Fund v. Marsh, 651 F.2d 983, 993 (5th Cir.1981). NEPA's requirements are not solely designed to inform the Secretary of the environmental consequences of his action. NEPA documentation notifies the public and relevant government officials of the proposed action and its environmental consequences and informs the public that the acting agency has considered those consequences. A federal agency could not know the potential alternatives to a proposed federal action until it complies with NEPA and prepares at least an EA.
 
 
 32
 To interpret NEPA as merely requiring an assessment of detrimental impacts upon the environment would significantly diminish the act's fundamental purpose--to "help public officials make decisions that are based on understanding of environmental consequences, and take actions that protect, restore, and enhance the environment." 40 C.F.R. 1500.1(c). Appellants' theory would cast the judiciary as final arbiter of what federal actions protect or enhance the environment, a role for which the courts are not suited.
 
 
 33
 Here, the County alleges that the proposed designation will prevent continued governmental flood control efforts, thereby significantly affecting nearby farms and ranches, other privately owned land, local economies and public roadways and bridges. These claims, if proved, constitute a significant effect on the environment the impact of which and alternatives to which have not been adequately addressed by ESA. Furthermore, unlike the county in Douglas County, Catron County actually owns land potentially affected by the designation; the final designation in Douglas County included only federal land. See Douglas County, 48 F.3d at 1498. It is true that after complying with NEPA's documentation requirements, the Secretary nonetheless may adhere to his proposed designation. Regardless, NEPA is clear: "to the fullest extent possible," federal agencies must comply with the act and prepare an impact statement for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C), (E).
 
 
 34
 Finally, Appellants argue that congressional failure to reverse or revise prior judicial and secretarial announcements of NEPA noncompliance evidences congressional endorsement of such noncompliance. Appellants correctly note that (1) in 1981, the Sixth Circuit excused secretarial noncompliance with NEPA in listing species as endangered or threatened under the ESA, Pacific Legal Foundation, 657 F.2d at 835; (2) in 1983, the CEQ issued a letter indicating that the Secretary may cease preparing NEPA impact statements when listing species under § 1533 of ESA, 48 Fed.Reg. 49,244 (1983); (3) in 1983, based on the recommendations in the CEQ letter, the Secretary announced in the Federal Register his intention not to prepare NEPA impact statements in connection with regulations promulgated under § 1533(a) of ESA, 48 Fed.Reg. 49,244-45 (1983); and (4) Congress, when amending ESA in 1988, did not revise or repeal these judicial and executive endorsements of NEPA noncompliance in conjunction with actions under § 1533 of ESA.
 
 
 35
 It is true that "when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.' " Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 846, 106 S.Ct. 3245, 3254, 92 L.Ed.2d 675 (1986) (quoting NLRB v. Bell Aerospace Co., 416 U.S. 267, 274-75, 94 S.Ct. 1757, 1761-62, 40 L.Ed.2d 134 (1974)). However, the failure to revise, unaccompanied by any evidence of congressional awareness of the interpretation, is not persuasive evidence. Girouard v. United States, 328 U.S. 61, 69, 66 S.Ct. 826, 829, 90 L.Ed. 1084 (1946) ("[I]t is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law"); see also Brown v. Gardner, --- U.S. ----, ----, 115 S.Ct. 552, 556, 130 L.Ed.2d 462 (1994). Something more than passivity is required. Schor, 478 U.S. at 846, 106 S.Ct. at 3254 (quoting Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 380-81, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969)). We find the congressional silence in this case unpersuasive.
 
 
 36
 Although a proponent of congressional acquiescence need not show that the acquiescence is "specifically embodied in a statutory mandate," he bears the burden of showing "abundant evidence that Congress both contemplated and authorized" the previous noncongressional interpretation in which it now acquiesces. Schor, 478 U.S. at 847, 106 S.Ct. at 3254; see also Wilderness Society v. Morton, 479 F.2d 842, 867 (D.C.Cir.) (en banc), cert. denied, 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973). In this case, Appellants have not demonstrated congressional contemplation or even awareness of either the Sixth Circuit's opinion in Pacific Legal Foundation, which only dealt with "listing," or the Secretary's announced policy published in the Federal Register. In fact, the legislative history makes no mention of either the Sixth Circuit's opinion or the Secretary's announcement. See H.R.Rep. No. 467, 100th Cong., 2d. Sess. 1-32 (1988), reprinted in 1988 U.S.C.C.A.N. 2700-50.
 
 
 37
 Second, the congressional acquiescence theory applies only where Congress has revisited the language subject to the administrative interpretation. Central Bank of Denver v. First Interstate Bank of Denver, --- U.S. ----, ----, 114 S.Ct. 1439, 1453, 128 L.Ed.2d 119 (1994). In this case, Appellants concede that "Congress, while amending other parts of [ § 1533], did not address the critical habitat provisions of that section." Aplt.Br. at 36. A review of both the 1988 amendments and corresponding legislative history supports Appellants' concession. See H.R.Rep. No. 467, 100th Cong., 2d. Sess. 1-32 (1988), reprinted in 1988 U.S.C.C.A.N. 2700-50. Moreover, neither the Sixth Circuit nor the Secretary in his 1983 announcement substantively addressed the designation provisions of ESA. While the Secretary mentioned ESA's designation provision in his 1983 announcement, he based his interpretation of NEPA's nonapplicability entirely on interpretations relative to ESA's listing provisions, the CEQ's "judgement that Section 4 listing actions are exempt from NEPA review" and the fact that the 1982 ESA amendments require "listing decisions ... to be based solely upon biological grounds and not upon consideration of economic or socioeconomic factors." 48 Fed.Reg. 49244-45 (emphasis added). We find the congressional silence under these circumstances unpersuasive.
 
 
 38
 While we recognize that interpretive analysis of legislative history is to be conducted with great caution, Blanchard v. Bergeron, 489 U.S. 87, 98, 109 S.Ct. 939, 947, 103 L.Ed.2d 67 (1989) (Scalia, J., concurring), it is interesting that Congress apparently intended the Secretary in some cases to prepare an impact statement when designating critical habitat under ESA. For instance, during the debates relative to those amendments, Senator McClure proposed an amendment that would have defined designation of critical habitat as a major federal action for purposes of NEPA. 124 Cong.Rec. S11143-45 (daily ed. July 19, 1978) (statements of Senators Wallop and McClure). Although Senator Wallop opposed the amendment, his opposition was based on the belief that the amendment would require an EIS even for designations not constituting major federal actions. Id. at S11144. Noting his intention to withdraw the amendment, Senator McClure emphasized his desire that the record "not indicate that, in the absence of the amendment [requiring an impact statement], there is no possibility that an EIS is required." Id. These statements indicate that Congress contemplated and intended secretarial compliance with NEPA when designating habitat under ESA.
 
 
 39
 The Conference Report for the 1978 amendments also indicates congressional acknowledgment and expectation that impact statements were to be prepared for those designations satisfying the requisite criteria under NEPA. The report notes in pertinent part that
 
 
 40
 Where critical habitat is specified[,].... [a]ctual notice of the regulation and any environmental assessment or environmental impact statement prepared on it is required to be given to all general local governments within or adjacent to the proposed critical habitat at least 60 days prior to its effective date.
 
 
 41
 H.R.Conf.Rep. No. 1804, 95th Cong., 2d. Sess. 27 (1978), reprinted in 1978 U.S.C.C.A.N. 9484, 9494 (emphasis added).
 
 
 42
 We conclude that the legislative history does not, as Appellants contend, indicate congressional endorsement of the Secretary's announcement in the Federal Register of NEPA noncompliance or silent acquiescence in applying and extending the holding of Pacific Legal Foundation to designations of critical habitat. Instead, the available material indicates that Congress intended that the Secretary comply with NEPA when designating critical habitat under ESA when such designations constitute major federal action significantly affecting the quality of the human environment. When the environmental ramifications of such designations are unknown, we believe Congress intends that the Secretary prepare an EA leading to either a FONSI or an EIS.
 
 
 43
 III. Preliminary Injunction.
 
 
 44
 We review a district court's grant of a preliminary injunction for abuse of discretion and "examine whether the district court committed an error of law or relied on clearly erroneous fact findings." Walmer v. Dept. of Defense, 52 F.3d 851, 854 (10th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 474, 133 L.Ed.2d 403 (1995). The County asserts that the Secretary's designation of critical habitat will prevent government flood control efforts thereby causing flood damage to countyowned land, roadways and bridges. An environmental injury usually is of an enduring or permanent nature, seldom remedied by money damages and generally considered irreparable. See Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 545, 107 S.Ct. 1396, 1404, 94 L.Ed.2d 542 (1987).
 
 
 45
 We find that the district court did not abuse its discretion in finding that the County's alleged injuries, supported by substantial evidence, constituted an imminent, irreparable injury warranting the grant of a preliminary injunction.
 
 
 46
 AFFIRMED.
 
 
 47
 FNThe Honorable Earl E. O'Connor, Senior United States District Judge for the District of Kansas, sitting by designation.
 
 
 
 [1]
 Under the APA, "agency action includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13) (emphasis added)
 
 
 [2]
 The ESA defines "critical habitat" as "the specific areas within the geographical area occupied by the species, at the time it is listed ... on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection."
 16 U.S.C. § 1532(5)(A)(i).