**SAN JUAN CITIZENS' ALLIANCE, Southern Ute Grassroots Organization, Plaintiffs,**

v.

**Bruce BABBITT, Secretary, United States Department of the Interior; and the United States Bureau of Land Management, Defendants,**

**Southern Ute Indian Tribe and Amoco Production Company, Defendants/Interveners.**

**Civil Action No. 00–RB–379(OES).**

United States District Court, D. Colorado.

Oct. 4, 2002.

Matthew Gilbert Kenna, Geoffrey Brent Hickcox, Kenna & Hickcox, P.C., Durango, CO, for Plaintiffs.

Stephen D. Taylor, U.S. Attorney's Office, Denver, CO, for Defendants.

Anthony J. Shaheen, Charles L. Kaiser, Charles A. Breer, Davis, Graham & Stubbs LLP, Denver, CO, Rebecca S. McGee, Amoco Production Co., Denver, CO, Bradley S. McKim, McKim Law Offices LLC, Golden, CO, Thomas H. Shipps, Sam W. Maynes, Maynes, Bradford, Shipps & Sheftel, Durango, CO, Scott B. McElroy, Mary Catherine Condon, Greene, Meyer & McElroy. P.C., Boulder, CO, for Intervenors–Defendants.

## ORDER DENYING DEFENDANT/INTERVENER'S MOTION TO DISMISS

BLACKBURN, District Judge.

This matter comes before me on defendants/interveners Southern Ute Indian Tribe and Amoco Production Company's Motion to Dismiss [# 60], filed November 30, 2000. The defendant moves pursuant to FED. R. CIV. P. 12(b)(1) and FED. R. CIV. P. 12(b)(6) to dismiss the complaint. The issues raised by or inherent to the motion have been fully briefed. Oral argument would not assist the court in the determination of the motion. I deny the motion.

The gravamen of the plaintiffs' complaint is that the defendants United States Bureau of Land Management ("BLM") and Bruce Babbitt, former Secretary, United States Department of the Interior have not completed a comprehensive analysis of the cumulative impacts of the increased coalbed methane activity in the San Juan Basin area either through an Environmental Impact Statement ("EIS") or a supplemental EIS. The plaintiffs claim that the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321–4370d, required the defendants to update previous environmental analyses of coalbed methane wells prior to any increase in coalbed activity. The plaintiffs allege that this failure resulted in a NEPA violation. Additionally, plaintiffs claim that defendants violated the Federal Land Policy Management Act ("FLPMA"), 43 U.S.C. § 1701–1784, by "taking, authorizing, permitting, or otherwise allowing continued or planned coalbed methane-related activities in the northern San Juan Basin which are not in conformance with the existing Resource Management Plan ("RMP") for the San Juan–San Miguel Resource Area." (Sec. Amd. Compl., ¶ 11).

The plaintiffs allege that the defendants have violated NEPA, 42 U.S.C. § 4321–4370d, FLPMA, 43 U.S.C. § 1701–1784, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701–706. (Sec. Amd. Compl., ¶¶ 103–106 and ¶¶ 107–109). The plaintiffs seek injunctive relief to compel defendant BLM to prepare an EIS before permitting any further drilling for coalbed methane on federal lands in the northern San Juan Basin and on the Southern Ute Indian Reservation in the northern San Juan Basin. (Sec. Amd. Compl., ¶ 28–29).

They also seek injunctive relief requiring, *inter alia*, that BLM immediately bar operation on, withdraw, and cease issuing all coalbed methane well permits, applicable Environmental Assessments ("EAs"), and Findings of No Significant Impact ("FONSIs") for uncompleted wells approved at 1:160–acre spacing. Additionally, the plaintiffs seek declaratory relief from the court finding that BLM's actions and decisions violation NEPA and FLPMA pursuant to the APA.

The defendants/interveners Southern Ute Indian Tribe ("SUIT") and Amoco Production Company ("Amoco") (collectively "defendants"), claim that the plaintiffs' Second Amended Complaint should be dismissed for the following reasons:

1) that because plaintiffs have not "actually challenged a specific final agency action" but rather alleged an impermissible wholesale, programmatic challenge to BLM's coalbed methane program in the northern San Juan Basin, this court lacks jurisdiction over the Second Amended Complaint (*Mot. to Dis.*, p. 1);

2) that because plaintiffs are challenging actions taken decades ago, NEPA and FLPMA do not authorize the relief requested (*Id.*);

3) that because plaintiffs are challenging "projected," future coalbed methane wells which have not yet been approved or considered by BLM, their claims are not ripe.;

4) that plaintiffs do not have standing to bring this action because they cannot show an actual or imminent injury in fact; and

5) that under *Burlington Resources Oil and Gas Co. v. Colorado Oil and Gas Conservation Comm'n*, 986 F.Supp. 1351 (D.Colo.1997), plaintiffs must appeal BLM's down-spacing decisions to the Interior Board of Land Appeals before seeking judicial review.

# I.

## *Undisputed Facts.*

Plaintiff San Juan Citizens Alliance ("SJCA") is a public advocacy and environmental organization interested in a coalbed methane development. (*Sec. Amd. Compl.*, ¶ 17). SJCA brings the Second Amended Complaint on its own behalf and on behalf of its members. (*Id.*). SJCA alleges that its organizational mission has been adversely impacted by defendants' alleged failure to comply with NEPA. (*Sec. Amd. Compl.*, ¶ 20).

Plaintiff Southern Ute Grassroots Organization ("SUGO") is a tribal organization involved in intra-tribal policies of the Southern Ute Indian Tribe. (*Sec. Amd. Compl.*, ¶ 18). SUGO alleges that its organizational mission has been adversely impacted by defendants' alleged failure to comply NEPA. (*Sec. Amd. Compl.*, ¶ 21).

BLM is the federal agency responsible for mineral extraction on federal and Indian lands located in the northern San Juan Basin. In 1990, BLM issued an EA for oil and gas operations in the Southern Ute Indian Reservation. In 1991, BLM issued a statewide Colorado Oil and Gas Leasing and Development Final EIS. On April 3, 2000, defendant BLM announced that it is currently preparing an EIS for coalbed methane activities on federal lands located in southwestern Colorado, including the northern San Juan Basin. The new EIS is scheduled to be completed this year, 2002.

The plaintiffs claim that the anticipated EIS is insufficient per se. The plaintiffs argue that NEPA precludes agency action that would have an adverse environmental impact or that would limit the choice of reasonable alternatives prior to concluding the NEPA review process. The plaintiffs claim that the defendants are in violation of NEPA for their failure to prepare of an

EIS or supplemental EIS prior to the following actions:

1) the May 3, 2000, adoption of a down-spacing decision allowing the density of coalbed methane wells to double in areas of the northern San Juan Basin;

2) the approval of applications for permits to drill at the denser 160–acre spacing through the issuance of an inadequate EAs and FONSIs under NEPA;

3) the reliance on "Interim Criteria" to allow continued and expanded coalbed methane development; and

4) the continued use of enhanced production methods despite significant new information or a general lack of information regarding the environmental impacts of such activities. (*Sec. Amd. Compl.*, ¶ 2).

The plaintiffs note that BLM in conjunction with the Colorado Oil and Gas Conservation Commission ("COGCC"), authorized and continues to authorize the drilling and operation of coalbed methane wells within the northern San Juan Basin based on a 1991 EIS and a 1990 EA for oil and gas operations in the Southern Ute Indian Reservations. The plaintiffs claim that the maximum coalbed methane well density envisioned in the 1990 EA and 1991 EIS and throughout the concomitant environmental analysis for the area producing coalbed methane was 1 well per 320 acres. However, the plaintiffs argue that since the issuance of the 1990 EA and the 1991 EIS, "significant new information has become available regarding the environmental impacts of the relatively new and experimental, yet rapidly proliferating [coalbed methane] production process." (*Sec. Amd. Compl.*, ¶ 7).

The plaintiffs claim that despite information illustrating previously unknown environmental impacts of BLM's actions and the techniques employed, BLM and COGCC have authorized several applications for a twofold increase in coalbed well density from 1:320 acres to 1:160 acres within the northern San Juan Basin. Pursuant to these applications, "several hundred" additional wells are anticipated. (*Sec. Amd. Compl.*, p. 8). As of October 25, 2000, the date of the filing of the Second Amended Complaint, allegedly several wells have been approved at the 160–acre spacing, including approximately 12 under a May 3, 2000, adoption of a recent large scale down spacing decision, envisioning over 700 new wells. (*Sec. Amd. Compl.*, ¶ 9).

Allegedly, each of these new wells was approved through "nearly identical" EAs and FONSIs. The plaintiffs claim the EAs and FONSIs fail to "adequately consider the cumulative impacts of the broader coalbed methane production program in the region." (*Sec. Amd. Compl.*, ¶ 9). As such, BLM should have issued a new EIS or a supplemental EIS discussing the possible environmental impact of shifting the coalbed methane well spacing from 1:320 to 1:160.

## II.

### *Claims Analysis.*

**A. Plaintiffs Have Standing to Pursue Their Claims**

Taking their arguments out of turn, the defendants claim that plaintiffs lack standing to sue because they make no allegations regarding a specific, concrete injury suffered by any member of their organizations. (*Mot. to Dis.*, p. 22). As I concluded previously in my September 16, 2002, Order [# 83], I find the plaintiffs' have averred with the requisite sufficiency that their organizations and their members have suffered an injury in fact. Accepting the plaintiffs' well-pleaded allegations as

true, the plaintiffs have established standing.

## B. Plaintiffs' Claims Are Permissible

The defendants claim that the court lacks jurisdiction over plaintiffs claims because their challenge is an impermissible "programmatic challenge" and is not limited to identifiable agency actions, similar to the broad substantive legal challenge presented in *Sierra Club v. Peterson*, 228 F.3d 559 (5th Cir.2000). (*Mot. to Dis.*, p. 3). The plaintiffs claim that this is not an impermissible programmatic, substantive challenge as was described in *Sierra Club v. Peterson*, but rather a challenge to the defendants' failure to comply with the *procedural* requirements of NEPA.

■ In addition to Article III standing requirements, a plaintiff seeking judicial review pursuant to the APA must (1) identify some "final agency action" and (2) demonstrate that its claims fall within the zone of interest protected by the statute forming the basis of its claims. *Lujan v. National Wildlife Fed.*, 497 U.S. 871, 882–83, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Catron County Bd. of Comm'r, New Mexico v. United States Fish & Wildlife*, 75 F.3d 1429, 1434 (10th Cir.1996). The defendants do not appear to dispute that the plaintiffs' claims are within the zone of interest of the apposite statutes.

■ With respect to "final agency action," the plaintiffs claim, *inter alia*, that the defendants "have proceeded to permit individual wells pursuant to [increased well spacing] orders without the benefit of a full cumulative impact analysis in an [EIS], which is required by the [NEPA]." (*Res.*, p. 3). The plaintiffs argue that judicial review under the APA is proper because the decision not to comply with NEPA in this way is a final agency action. I agree with the plaintiffs.

NEPA requires that federal agencies prepare an environmental impact statement ("EIS") when there has been a recommendation or report on proposals for legislation and other *major federal actions* significantly affecting the quality of the human environment. 42 U.S.C. § 4321, et seq (emphasis added); *see also Colorado River Water Conservation Dist. v. U.S.*, 593 F.2d 907, 910 (10th Cir.1977) (citing *Aberdeen & Rockfish R.R. Co. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 422 U.S. 289, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975)). A failure to prepare an EIS is a final agency action within the meaning of the APA. *See* 5 U.S.C. § 551(13) ("agency action includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."); *Catron County Bd. of Comm'rs, New Mexico*, 75 F.3d at 1434 ("The Secretary's alleged failure to comply with NEPA constitutes 'final agency action'") (citing 5 U.S.C. § 551(13)).

In evaluating an agency's decision not to develop an EIS or a SEIS courts utilize a two part test. *Southern Utah Wilderness Alliance v. Norton*, 301 F.3d 1217, 1238 (10th Cir.2002). First, they look to see if the agency took a "'hard look' at the new information to determine whether [supplemental NEPA analysis] is necessary." *Id.* (citing *Headwaters, Inc. v. Bureau of Land Mgmt., Medford Dist.*, 914 F.2d 1174, 1177 (9th Cir.1990) (citations omitted)). Second, after a court determines that an agency took the requisite "hard look," it reviews an agency's decision not to issue an EIS, a SEIS, or a supplemental EA under the APA's arbitrary and capricious standard. *Southern Utah Wilderness Alliance*, 301 F.3d at 1238 (citing *Marsh v. Ore. Natural Res. Council*, 490 U.S. 360, 377, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989); *Colo. Envtl. Coalition v. Dombeck*, 185 F.3d 1162, 1178 (10th Cir.1999); *Friends of the Bow v. Thompson*, 124 F.3d 1210, 1218 (10th Cir.1997); *Hughes River*

*Watershed Conservancy v. Glickman,* 81 F.3d 437, 443 (4th Cir.1996)).

On the face of the Second Amended Complaint, plaintiffs are not claiming that the agency failed to take a "hard look" prior to deciding not to issue an EIS or a SEIS. Rather, the gravamen of their complaint is that the defendants' failure to prepare an EIS or a SEIS was arbitrary and capricious and not in accordance with the law. *(Sec. Amend. Com.,* p. 27). Specifically the plaintiff alleges the following actions constitute a major federal action, which necessitated the production of an EIS or a SEIS:

> BLM has exercised its authority to approve and permit additional coalbed methane wells at a greater density than was considered in the most recent NEPA analyses nearly a decade ago. Over the past year, BLM and the Colorado Oil and Gas Conservation Commission ("COGCC") have approved several applications from oil and gas companies for a twofold increase in [coalbed methane] well density from 1:320 acres to 1:160 acres within the northern San Juan Basis, and have proceeded to permit individual wells pursuant to those spacing orders without the benefit of a full cumulative impact analysis in an Environmental Impact Statement ("EIS")

under NEPA. Rather BLM has prepared multiple, less intensive Environmental Assessments ("EA") for numerous individual [coalbed methane] infill wells, concluding Findings of No Significant Impact ("FONSIs") that no further analysis in an EIS would be required. BLM has also issues and relied upon an uninformed and unsubstantiated "Interim Criteria" for allowing continued development prior to completion of the programmatic NEPA analysis which is slowly emerging, and continues to approve the use of enhanced production techniques which themselves have yet to undergo required NEPA analysis. *(Res.,* p. 3).

The plaintiffs have sufficiently pleaded that the defendants' preparation of EAs and FONSIs rather than an EIS was arbitrary and capricious.[1] Therefore, I find and conclude that the plaintiffs have stated with sufficiency a claim for judicial review.

## C. Plaintiffs' Claims for Relief are Appropriate under NEPA and FLPMA

The defendants claims that plaintiffs requested relief with respect to existing oil and gas operations is "unprecedented" and is "not authorized by NEPA or FLPMA." *(Mot. to Dis.,* p. 12). The defendants argue that the plaintiffs impermissibly at-

---

1. "Where the environmental effects are uncertain, the agency must prepare an EA to determine whether a significant effect will result from the proposed action." *Catron,* 75 F.3d at 1434 (citing 42 U.S.C. § 4332(2)(E); 40 C.F.R. § 1508.9; *Oregon Natural Resources Council v. Lyng,* 882 F.2d 1417, 1421–22 (9th Cir.1989)). Based upon the EA, the agency must either make a "finding of no significant impact" (FONSI) or determine if a significant environmental impact will result, thus requiring the preparation of an EIS. *Id.* (citing *Committee to Preserve Boomer Lake Park v. Dept. of Transp.,* 4 F.3d 1543, 1554 (10th Cir.1993)).

   If after preparing the EA, the agency concludes that a proposed action will not signifi-

cantly affect the environment, the agency may issue a "finding of no significant impact" (FONSI) and "need not prepare a full EIS." *Southern Utah Wilderness Alliance v. Norton,* 301 F.3d 1217, 1237–1238 (10th Cir.2002) (citing *Friends of the Bow v. Thompson,* 124 F.3d 1210, 1214 (10th Cir.1997)) (citing 40 C.F.R. § 1501.4(e)). NEPA does not require an agency to reach a particular substantive outcome. *Id.* (citing *Marsh v. Ore. Natural Res. Council,* 490 U.S. 360, 371, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989); *Envtl. Def. Fund, Inc. v. Andrus,* 619 F.2d 1368, 1374 (10th Cir.1980)). However, agencies must comply with NEPA "to the fullest extent possible." 42 U.S.C. § 4332.

tempt to challenge activities that occurred over a decade ago. NEPA and FLPMA, they argue, affect only decisions going forward and are "not vehicles for revisiting decisions made decades ago." (*Id.*, p. 12).

■ This argument cuts too broadly. How would an agency be held accountable for violations of NEPA or FLPMA if a court were precluded from reviewing a final agency action? In any event, the plaintiffs' requests for declaratory and injunctive relieve focus almost exclusively on the agency's recent decision to increase the coalbed well density from 1:320 acres to 1:160 acres and BLM's failure to prepare an EIS or SEIS.

Next, the defendants try to claim in a footnote that the principles of res judicata and collateral estoppel preclude the plaintiffs' arguments because the plaintiffs have already challenged BLM's decision on NEPA and other grounds and did not seek judicial review of the adverse agency decisions. It is unclear whether the plaintiffs' have challenged BLM's failure to provide an EIS for the 1:160 acre coalbed methane well spacing decision. Further, on a motion to dismiss, I do not have the benefit of the administrative record to confirm the defendants' contentions. Therefore, for purposes of a FED. R. CIV. P. 12(b)(1) and (6) review, I reject this argument.

Finally, the defendants claim, again in a footnote, that the defendants arguments are moot. Because of the ongoing nature of the alleged NEPA violations of BLM, I reject this argument and find and conclude that the plaintiffs have pleaded with sufficiency a claim for relief.

## D. Plaintiffs' Claims are Ripe for Review

Interestingly, in an apparent contradiction to their argument that the plaintiffs claims are essentially backward looking and moot, the defendants argue that the "plaintiffs are challenging "projected," future coalbed methane wells which have not yet been approved yet (sic) or considered by the BLM." (*Mot. to Dis.*, p. 1). The defendants claim that because it will be undertaking NEPA analysis in the near future, a court cannot find it arbitrary and capricious that the defendants failed to complete an EIS or SEIS prior to taking the alleged adverse action. Therefore, the defendants argue that the plaintiffs' claims are not ripe. (*Mot. to Dis.*, p. 15). Specifically, the defendants argue that the issue is not fit for judicial review because 1) no final agency action has occurred; 2) judicial action would inappropriately interfere with further administrative action; and 3) the court would benefit from BLM's consideration of the issues presented. (*Id.*, pp. 15–17).

■ The ripeness requirement is a doctrine designed to prevent the courts from " 'entangling themselves in abstract disagreements over administrative polices, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' " *Sierra Club v. U.S. Dept. of Energy* 287 F.3d 1256, 1262 –1263 (10th Cir.2002) (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). To determine if an agency's decision is ripe for review, the court examines both the "fitness of the issues for judicial decision" and the "hardship to the parties of withholding court consideration." *Id.* (citing *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998)). In doing so, the court must consider 1) whether delayed review would cause hardship to the plaintiffs; 2) whether judicial intervention would inappropriately interfere with further administrative action; and 3) whether the courts would benefit

from further factual development of the issues presented. *Id.*

■ The plaintiffs respond that the defendants ignore the plaintiffs' primary concern which is ongoing coalbed methane production activities that presently are causing environmental harm and posing an actual and immediate threat within the meaning of *Lujan.* The plaintiffs note that the BLM has already approved without the benefit of an EIS or SEIS COGCC's down spacing orders and applications for permits to drill at the denser 160–acre spacing. (*Res.,* p. 16). This failure to prepare an EIS or SEIS constitutes arguably a final agency action. Second, the plaintiffs respond that judicial action would not inappropriately interfere with administrative action since BLM has conclude by virtue of their EAs and FONSIs that no further review of environmental impacts is necessary. Finally, the plaintiffs assert that BLM's continued delay and present failure to provide an EIS or SEIS prior to commencing the issuance of down spacing orders and applications for permits to drill presents sufficient finality and ripeness to permit review. The plaintiffs suggest that the credibility of the defendants' claims that BLM's further analysis would benefit the court is questionable given the "piecemeal" approach and analysis undertaken by it thus far. The plaintiffs insist that judicial review is critical to ensure sufficient analysis of the impacts of BLM's action and "to correct BLM's narrow and piecemeal approach to addressing these impacts." (*Res.,* p. 26).

The defendants' assertion that it hopes to fulfill, or even will fulfill, its NEPA obligations in the future does not address its current failures to act and is misguided. *See, e.g., Southern Utah Wilderness Alliance,* 301 F.3d at 1239 (citing *Portland Audubon Soc'y v. Babbitt,* 998 F.2d 705, 709 (9th Cir.1993)) ("[W]e are unmoved by the Secretary's claim that it would be fu-

tile to prepare supplemental EISs ... when its new Resources Management Plans and accompanying EISs will address all·the relevant information."). Therefore, I find and conclude that delayed review could cause hardship to the plaintiffs, judicial intervention would not inappropriately interfere with further administrative action, and the court would not benefit from further agency action (or lack thereof). I agree with the plaintiffs and find that the plaintiffs' claims are ripe for judicial review.

**E. Exhaustion is Not Required**

■ Finally, the defendants argue that the plaintiffs' claims requesting judicial review of the May 3, 2000, spacing orders should be dismissed because the plaintiffs failed to exhaust administrative remedies. The APA section 704 expresses the administrative "exhaustion" requirement, which applies to all challenges to agency action brought under the APA. *Darby v. Cisneros,* 509 U.S. 137, 154, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993). Federal courts do not have the authority to require a plaintiff to exhaust administrative remedies prior to judicial review where neither the relevant statute nor the agency rules *"expressly require[s]"* exhaustion as a prerequisite to judicial review and where the action has been considered "final" under the APA. *Id.* (emphasis added).

The apposite agency regulations at issue in this matter are found at Title 43 of the Code of Federal Regulations. It states in relevant part:

Any party adversely affected by the decision of the State Director after State Director review, under § 3165.3(b) of this title, of a notice of violation or assessment or of an instruction, order, or decision *may appeal that decision* to the Interior Board of Land Appeals pursuant to the regulations set out in Part 4

of this title. 43 C.F.R. § 3165.4(a) (emphasis added).

Any person who is aggrieved by a final order of the Secretary under this section *may seek review of such order in the United States District Court* for the judicial district in which the alleged violation occurred. 43 C.F.R. § 3165.4(f) (emphasis added).

Rather than expressly requiring it, 43 C.F.R. § 3165.4 provides for administrative appeal of decisions made by BLM to the Interior Board of Land Appeals prior to judicial review.

Second, the Department of Interior's regulations do not render the appealed decision "inoperative" by virtue of an automatic stay. 43 C.F.R. § 4.21(b); *see Darby v. Cisneros,* 509 U.S. at 154, 113 S.Ct. 2539. In fact, the Department of Interior's regulations specifically state that an aggrieved party must affirmatively "request a stay and make a compelling threshold showing to justify the stay." 43 C.F.R. § 4.21(b). This process vests discretion in the Interior Board of Land Appeals, whereas the APA requires unequivocally that the statute itself must deem an action *inoperative* while administrative appeal is pending. *See Darby,* 509 U.S. at 154, 113 S.Ct. 2539.

Because apposite administrative appeal regulations do not require administrative appeal or provide procedures that render *inoperative* the decision pending appeal, the plaintiffs were not required to exhaust administrative remedies prior to seeking judicial review. *See Darby,* 509 U.S. at 154, 113 S.Ct. 2539. The defendants' reliance on *Burlington Resources Oil & Gas Co. v. Colorado Oil & Gas Comm'n* is misplaced. *Burlington* simply provides that decisions made by COGCC should be treated the same as those made by BLM and makes clear that aggrieved parties are entitled to all of the appurtenant rights and appeals processes associated with a decision made by BLM. *See Burlington Resources Oil & Gas Co. v. Colorado Oil & Gas Comm'n,* 986 F.Supp. 1351, 1354 (D.Colo.1997)

I respectfully disagree with the court's position in *Burlington* that 43 C.F.R. 3165.3(a) *requires* administrative appeal. In fact, 43 C.F.R. 3165.3(a) provides for notice to be given to an operating rights owner or operator to comply with any provisions of a lease, which is not at issue in this case. I reject defendants' motion to dismiss on the basis of exhaustion.

**THEREFORE IT IS ORDERED** that defendants/interveners Southern Ute Indian Tribe and Amoco Production Company's Motion to Dismiss [# 60], filed November 30, 2000, IS DENIED.